UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | |
| | : | Mag No. 12 3531 |
| RAYMOND NORVILLE | | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

SEE ATTACHMENT A

I further state that I am a Special Agent, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_Denise Gerardi_
Denise A. Gerardi, Special Agent
U. S. Department of Labor
Office of Inspector General
Office of Labor Racketeering &
Fraud Investigations

Sworn to before me and subscribed in my presence,
February, 14 2012 at Newark, New Jersey

Honorable Mark Falk
United States Magistrate Judge     Signature of Judicial Officer

<u>ATTACHMENT A</u>

    From in or around February 2007, through in or about June 2008, **RAYMOND NORVILLE,** did knowingly and willfully embezzle, steal and unlawfully convert to his own use, and the use of others, money and funds of Local 1233 of the International Longshoreman's Association, a labor organization of which he was employed by causing the union to disburse funds to him by improperly invoicing the union for renovations to it's office building that was the result of over billing, using duplicate invoices and work not performed, totaling at least $100,000, contrary to Title 29, United States Code, Section 501(c).

ATTACHMENT B

I am a Special Agent (hereinafter "Your Affiant") with the Department of Labor, Office of Inspector General (DOL-OIG), and I am assigned to the Special Agent in Charge in New York, NY. My office is located in Springfield, New Jersey. I have been a Special Agent with the DOL-OIG since February 1999. My duties and responsibilities include, among others, the investigation of criminal violations relating to labor organizations, as well as the investigation of fraud, waste and abuse within the Department of Labor, and the programs it administers.

## Introduction

At all times relevant to this complaint:

1. Local 1233 of the International Longshoreman Association (hereinafter "Local 1233", headquartered in Newark, New Jersey, is a "labor organization" as that term is defined in Title 29, United States Code, Sections 142(3), 152(5), 402(i) and 402(j). It represented, sought to represent, and would have admitted to membership individuals who worked on the ports of New Jersey and New York.

2. Defendant Raymond Norville (hereinafter "Norville"), owner of RRL Unique Homes, Inc. (hereinafter "RRL") located in Orange, NJ, was hired by Local 1233 of the International Longshoremen's Union to renovate and repair portions of the union's office building located at 731 S. 10th Street, Newark, NJ from in or about February 2007 to in or about June 2008. Based upon that agreement, Mr. Norville can be considered an indirect employee of the Local. The invoices that Norville submitted to the union are either handwritten or typed. Norville personally prepared the handwritten invoices, which for the most part, are illegible. An employee of RRL prepared the typed invoices based on information provided by Norville. The union paid RRL a total of $379,517.00 during the period.

3. During the course of my investigation of Local 1233, your Affiant has reviewed records subpoenaed by a Federal grand jury and conducted interviews of numerous individuals, including among others, Local 1233 Executive Board members, as well as vendors, service providers and other individuals having had

business with Local 1233. In addition, the government retained the services of an independent, professional building inspector to evaluate the renovations and repairs performed by RRL.

**Payments from Local 1233 to RRL based on false, inflated and duplicate invoices between February 2007 and December 2007**

4. Based on my review of the records, from in or about February 2007 through in or about December 2007, Norville submitted 33 invoices totaling $324,221.94 to Local 1233 for renovation and repairs to the union's office building. The work was performed by RRL, Norville's company, and relates to repairs and installation of air conditioning units and electrical and plumbing systems located in the restrooms, basement, ballroom, kitchen and rooftop, repairs to lighting units located throughout the interior and exterior of the building and, repairs to interior and exterior walls. The union paid for the work over a 14-month period beginning in February 2007 and continuing through April 2008. Norville is not a licensed electrician or plumbing contractor in the State of New Jersey. Norville did not obtain permits from the City of Newark to perform any of the construction to the union's building.

5. Based on my review of the records and interviews, the invoices presented to Local 1233 were either handwritten by Norville or typed by a RRL employee. By his own admission, Norville prepared the information contained in all of the handwritten and typed invoices. Of the 33 invoices submitted to the union in 2007, six (6) were handwritten. These invoices were handwritten by Norville and are almost illegible. The remaining 27 invoices are typed. These invoices lack specificity and report in general terms information about the work to be completed. For example, some invoices state simply "waterproofing the basement" and "trouble shooting" electric. The invoices do not indicate what steps will be taken or materials to be used to waterproof the basement or where, specifically, an electrical problem exists and precisely what needs to be fixed. Indeed, the vast majority of the invoices do not reflect the materials to be used or their associated cost.

6. On June 22, 2011, Norville, your affiant and others conducted a walk-through of the Local 1233 building. Norville consented to a video recording of the tour, including any statements he made. Norville reviewed each invoice, brought your affiant to the corresponding locations in the building and,

4

described the work that the union was billed for. During the course of the tour, it became apparent that many invoices were redundant and contained similar language, if not the same work. Also, the union was billed and paid for a floor installation that, according to Norville was never done by RRL.

7. Based on interviews, a review of the records, my observation of the work allegedly completed by RRL and the expert reported discussed below, I concluded that Norville: 1) submitted false invoices for renovations and repairs that were not done, 2) he submitted invoices that significantly inflated the cost of the work that was to be done and, 3) submitted for payment duplicate invoices for work that the union had already paid for. In addition, although not an expert, the renovations and repairs frequently appeared to be of shoddy or poor quality.

8. On August 22, 2011 the government retained an independent, professional building inspector to inspect and evaluate the construction performed by RRL to determine whether or not Local 1233 received the services it paid for. On September 8, 2011, the Inspector conducted a physical inspection of the building with government Agents. The Inspector was provided with the invoices and statements made by Norville during interviews on June 8, 2011 and June 22, 2011. The Inspector's findings and conclusions are stated in his report of September 24, 2011. His findings are based on the physical inspection, a comparison of the invoices to the work purportedly performed and statements made by Norville.

9. Based on my review of the inspector's report, the inspector concluded that Local 1233 did not receive the services for which it paid RRL. Specifically, the inspector determined that Norville had defrauded the union in the following ways: 1) he charged the union for renovations that were not done; 2) he over-charged the union by inflating the cost of work done; 3) he double billed the union for the same work, whether it had been done or not.

10. As an example, on or about February 26, 2007, Norville prepared and submitted to Local 1233 a RRL invoice for $2,600. The invoice was handwritten by Norville and is largely illegible. What can be discerned states, in part, "Relocate toilets from one section to another", "Shift toilets 14", "Trouble shoot hot water problem", "Trouble shoot electric problem" and "Electric wiring". The Inspector reviewed the invoice and conducted a physical

inspection of the restrooms. The Inspector determined that the toilets and plumbing had not been relocated and that the flanges and seals had not been replaced. Furthermore, based on the lack of specificity in the invoice, the Inspector was unable to determine what work, if any, had been done relating to the electric or hot water. The Inspector concluded, based upon his inspection of the precise areas mentioned in the invoice that Norville did not provide the service referenced and therefore was not entitled to the $2,600.

    11. On or about April 13, 2007, Norville prepared and submitted to Local 1233 a RRL invoice for $9,600. The illegible invoice was handwritten by Norville. On June 8, 2011 Norville told the Agents that the invoice was for renovating the 2nd floor bathroom, including replacing waste stacks for the sink and toilet. Norville stated that the bathroom was previously renovated in January 2007 by another contractor who did shoddy work. Norville further stated that the invoice relates to the replacement of the ballasts located on the 2nd floor and fixing and charging two adjoining AC units on the lower roof. On June 22, 2011 Norville told Agents that the invoice relates to the installation of a new AC unit installed in the ballroom, including a new air handler, ductwork and copper lines. Based on a review of the invoice, Norville's statements and his observation of the renovation, the Inspector determined that Norville did not install a new AC unit, the ductwork, and air handler in the ballroom. He also found that the ductwork design was poor and would not accommodate the ballroom when reasonably full. Additionally, the ballasts replaced on the 2nd floor were already charged to the union on a previous invoice, as was the bathroom renovation. The AC compressors on the lower roof were replaced and should have cost approximately $4,000. The Inspector concluded that some of the work on the invoice was done, but done poorly; while other work was not done at all, or had been previously paid for, resulting in a loss to the union of approximately $5,600.

    12. On or about May 1, 2007, Norville prepared and submitted to the union a RRL invoice for $9,220. The invoice is typed. The invoice states, "Electrical work in hallway: New wiring, exit lights, light switch and boxes $2,700", Remodeling upstairs bathroom $3,200", "Servicing 2 rooftop units $1,300", "Servicing 2 air handlers $950", "Servicing 2 rooftop condensers $1,070". On June 8, 2011 Norville conceded that the work on this invoice also appears on the handwritten invoice of April 13, 2007

6

for $9,600. Norville said that the union was billed only once, even though two invoices were submitted. Based on your affiant's review of the union's canceled checks, Local 1233 paid both invoices in April 2007 and May 2007. An apparent loss of $9,220 was incurred by the union.

13. On or about June 1, 2007, Norville prepared and submitted to Local 1233 a RRL invoice for $23,750. The invoices relate to repairs in the basement, specifically: 1."replacing additional structural steel support", 2. "waterproofing basement" and 3. "[Installing] an exterior drain". The Inspector determined that the cost to replace a steel beam should be approximately $3,000, that the exterior drain replacement appears on a prior invoice and, that some waterproofing may have been performed but was at best insufficient; since water was noticeably streaming into the basement and pooling, during his inspection. The Inspector concluded that the union should have only paid $3,000 for the installation of the steel beam replacement and that Norville was not entitled to the remaining $20,750 paid by the union, based upon the non-performance or extremely poor performance on the waterproofing invoice work.

14. On or about June 8, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $15,300. The invoice states, 1. "Change electric wiring from main electric panel" and 2. "Sub panel going to another 3 phase wire panel & main panel". The Inspector, first off, determined that the work, even if done properly, was significantly overvalued by approximately $7,000. The Inspector further noted that some of the electrical work actually performed was not done properly and, in fact, posed a safety hazard. He concluded that the union had been overbilled and that Norville was not entitled to the benefit of approximately $8,300 in added funds paid by the union.

15. On or about June 16, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $16,690. The invoice describes the job as follows: "Replace 4" sewer line main - "Running front to back". No other information is provided. The Inspector determined that similar work appears on previous invoices for which the union had paid. The Inspector concluded that the union had been double billed and Norville was not entitled to $16,690.

16. On or about June 21, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $3,750. The invoice

describes the scope of the work as follows: "Replace electrical wiring and components" and "Replace electrical wiring in DJ's room". No other information is provided. [The union hall has a function room that was rented out for entertainment purposes] The Inspector found that the work had not been performed because no new wiring, components or equipment appears in the DJ room. The Inspector concluded that Norville had not provided the work described in the invoice, therefore was not entitled to $3,750 paid by the union.

17. On or about June 28, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $14,450. The invoice describes the job as follows: "Re-instillation (sic) of exterior sign lighting" and "Electrical wiring". The Inspector determined that the work was worth $2,400 and that Norville had grossly inflated the invoice by approximately $12,000. The Inspector concluded that Norville was not entitled to approximately $12,000 in additional funds paid by the union, pursuant to the invoice.

18. On or about July 2, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $13,967.78. The invoice describes the job as follows: "Fix and upgrade refrigerator and freezer" and "Electrical work in storage area". No other information is provided. The Inspector determined that the work should have cost approximately $3,000 and therefore, the union was grossly over-charged by approximately $10,000. The Inspector concluded that Norville should not be entitled to the additional $10,000 paid by the union, pursuant to the invoice submitted.

19. On or about July 6, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $10,165. The invoice states, "Re-wire Electric sub panel from roof top air condition [ing?]". The Inspector determined that the same electrical work appears on prior invoices and had already been paid for by the union. The Inspector concluded that Norville was not entitled to the additional $10,165 paid by the union, pursuant to the invoice submitted.

20. On or about July 13, 2007, Norville prepared and submitted to Local 1233 an RRL invoice for $15,200. The invoice states, "Installation of 3½ ton air conditioner" and "Re-wire air conditioner panel for hall". The Inspector determined that the work should have cost approximately $5,500 and that Norville inflated the invoice by as much as $9,700. The Inspector

8

concluded that Norville was not entitled to the approximately $9,700 in additional union funds paid by the union, pursuant to the invoice submitted.

21.     Your Affiant has identified many, but not all, of the circumstances highlighted by the Inspector in his report reflecting fraud by Norville at Local 1233. The Inspector has determined that from in or about February 2007 through in or about December 2007, Norville received at least $100,000 from Local 1233 for which he was not entitled, based on inflated and duplicate invoices, and for work either poorly performed or services simply not performed at all by RRL.

**Payments from Local 1233 to RRL based on inflated and duplicate invoices and work not performed between January to June 2008**

22.     Based on a review of the records, interviews and statements by the defendant, Your Affiant determined that from in or about January 2008 through in or about June 2008, Norville prepared and submitted seven (7) additional invoices to Local 1233, totaling $47,188. The invoices are for renovations and repairs purportedly made to the union's office building by RRL. There is no indication whether the invoices reflected work done in 2007 or in 2008. Nonetheless, the union paid the invoices between May and June 2008. The invoices describe work performed on the air-conditioning, plumbing and electrical systems of the union's office building. Based on a review of the records, interviews, Norville's own statements, and the conclusions of the Inspector, these 2008 invoices describe repairs and renovations most, if not all, are for work already paid for, according to prior invoices. The double billing resulted in a loss to the union of approximately $47,188.

23.     In conclusion, Your Affiant has determined, based upon all the factors identified above, that from in or about February 2007 through in or about June 2008, Mr. Norville received at least $100,000 from Local 1233 for payment of inflated and duplicate invoices, and for renovations and repairs not performed on the Local 1233 office building, in violation of Title 29, United States Code, Section 501 (c).